Sherman **SHORE**

v.

**UNITED STATES.**

No. 398–56.

United States Court of Claims.
July 16, 1958.

Samuel K. Abrams, New York City, Robert M. Lichtman, Washington, D. C., on the brief, for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

The plaintiff, a former civilian employee of the United States Information Agency, filed this suit for damages on the basis of alleged arbitrary cancellation by the agency of an alleged initial assignment to Colombo, Ceylon. Plaintiff pleads that he had a contract of employment for the specific assignment, and that he, therefore, is entitled to recover for the breach on the part of the defendant agency of the contract of assignment.

It is the defendant's position that under the statute and governing regulations the cancellation by the Government of an assignment of one of its employees to duty at a specified geographical location does not give rise to a cause of action for damages against the United States, and that in the light of existing legislation no one had authority to deprive the Secretary of State of the statutory authority to assign a staff officer or employee to any post and to transfer such employee from one post to another.

On or about August 24, 1955, plaintiff was appointed to the position of information officer effective September 12, 1955, at a salary of $7,630. At the time of such appointment he was employed in civilian work at Winston-Salem, North Carolina. He was to report to Washington, D. C., for about eight weeks of training duty and was thereafter to be assigned to Colombo, Ceylon.

Plaintiff reported for duty September 12, 1955, but on or about October 10, 1955, his assignment was changed from Colombo to New Delhi, India. The new assignment was in the same grade and with the same salary. Travel to his new post was duly authorized.

The plaintiff declined the assignment to New Delhi and was thereafter offered a post at Rangoon, Burma, carrying the same grade and salary. This offer was refused. He was then considered for a post in Ankara, Turkey, which he refused, and thereafter was offered an assignment in Washington, D. C., until such time that an assignment satisfactory to the Government and the plaintiff could be made. This he also refused, and on November 28, 1955, submitted his resignation by letter, to be effective at the convenience of the Government. The resignation was accepted as of December 3, 1955.

The plaintiff alleges that at the time of his appointment on August 24, 1955, and for ten years prior thereto, he had been city editor of the Twin City Sentinel, Winston-Salem, North Carolina, at the salary of $114.50 a week, with certain pension and seniority rights, which he gave up at the time of his appointment; that he spent approximately $3,500 in securing essential supplies for the new assignment, closed his home, and after the cancellation of his assignment and after making every reasonable effort

to secure a satisfactory or comparable substitute position with the United States Information Agency, he was employed by the Winston-Salem Journal, Winston-Salem, North Carolina, and has been connected with that organization since November 11, 1955. The items which plaintiff claims as damages for the breach of contract of his appointment are set out in paragraph 10 of his petition and involve the differential in the salary which he would have received as information officer at Colombo, Ceylon, and the salary he has received as an employee of the Winston-Salem Journal, and also the value of accrued pension and seniority rights which he had with the Twin City Sentinel; the cost sustained in seeking employment after the cancellation of the Colombo appointment; the damages from the loss of opportunity to improve his status in the newspaper field, and the cost of storing furniture, breaking up his home in Winston-Salem, removing the furniture from storage and opening up the home again. The claims asserted by the plaintiff in his petition total $51,723. Claim was filed with the United States Information Agency on various items involving a total of $13,811.55, of which amount $27.30 was allowed.

By the terms of section 531 of the Foreign Service Act of 1946 (60 Stat. 999, 22 U.S.C.A. § 936), the Secretary of State is clothed with authority to employ Foreign Service staff officers and employees.

The next section (section 532) of the same act is as follows:

"The Secretary may, in accordance with uniform procedures established in such regulations as he may prescribe, assign a staff officer or employee to a position at any post and *transfer* such a person from a position in one class to a vacant position within the same class, and *from one post to another.* * * *" [Emphasis supplied.] 22 U.S.C.A. § 937.

We also quote from the Foreign Service Manual a portion of the regulations which were in effect on the dates involved here. The pertinent part of section 142.11 of Part IV is as follows:

"Foreign Service personnel who are citizens of the United States are required, as a condition of employment, to accept assignment on a Service-wide basis."

Section 143.1 contains a provision that "Assignment may be made of Foreign Service personnel to any Foreign Service post."

The plaintiff submits an affidavit that is on file with the papers in the case which sets out briefly the position held by him prior to his appointment. Also, according to this affidavit, he had discussions with Mr. Richard S. Barnsley, Personnel Director, Near East Division, of the United States Information Agency, who offered him, by telephone, an appointment as information officer at Colombo, Ceylon. This offer was made about August 10, 1955; that thereafter he engaged in a series of discussions with Mr. Barnsley and Mr. Clary Thompson, Assistant Area Director for the Near East of the United States Information Service; that plaintiff stressed to both Barnsley and Thompson the fact that he would not accept employment in the USIA if his first assignment were to a place where transition from his life in the United States would be difficult for his family; that he further discussed the matter with a relative who had lived in Ceylon and ascertained that English was spoken in Ceylon; that on the basis of representations that Ceylon would be his first assignment he accepted the USIA's offer; that by letter of August 24, 1955, the USIA confirmed the approval of his appointment as information officer, Colombo, Ceylon; that he thereupon effected his resignation from the Twin City Sentinel; that he expended some $3,500 in purchasing equipment, wardrobes for himself and family and other supplies that he would need in the tropical climate of Colombo; that he reported to Washington, D. C., on September 12, 1955, for eight weeks of preliminary training; that his wife closed

their house in Winston-Salem and, with their young son, joined him in Washington; that on September 28, 1955, he was notified by Barnsley of the cancellation of his assignment to Colombo, and that he subsequently learned that the cancellation was due to the objections of Mr. John Esterline, the public affairs officer in Colombo, and that Thompson stated that Esterline desired an information officer who would not offer career competition and one he could order around.

The plaintiff's affidavit further states that he indicated his willingness to Barnsley to accept a comparable assignment; that he rejected the New Delhi offer because he learned that he would be subjected to heavy Indian import duties on the supplies that he would take with him and be required to make an additional expenditure of funds; that he rejected the Rangoon assignment on account of sanitary conditions prevailing there, and the native unrest which might endanger the safety of his family; that he considered the offer of an assignment to Ankara, Turkey, but that he was requested to take an immediate test in connection with his knowledge of the Turkish language and because he had not used that language for some years he would require a period of preparation.

Mr. Clary Thompson, who was Deputy Assistant Director for Near East, South Asia and Africa, United States Information Agency, also filed an affidavit which is attached to defendant's motion for summary judgment. In this affidavit Mr. Thompson indicates several conversations were had prior to the actual appointment, but states that Mr. Shore's application was submitted and prosecuted on the basis of his willingness to serve anywhere he was assigned by the agency; that during the period of training he and the personnel officer decided not to assign Mr. Shore to the Colombo post because information received from that post indicated that the plaintiff's qualifications were not entirely appropriate for the work that would be required

and that he advised Mr. Shore of this fact. He then confirms the various offers which were made to Mr. Shore in an effort to satisfy him in the way of an assignment. Mr. Thompson asserts that the area personnel officer subsequently notified him that he had offered Mr. Shore employment in Washington, D. C., until such time as an assignment satisfactory to Mr. Shore and the agency could be made.

In the affidavit by Richard S. Barnsley, who at the time was the Chief of the Personnel Branch, Near East, South Asia and Africa Area, United States Information Agency, the statement is made that in the telephone conversation he emphasized the point that the agency was interested in employing only officers who would stay with the organization on a career basis and would be willing to accept assignments in all parts of the world. He confirms the various offers that were made to Mr. Shore and that in an effort to retain Mr. Shore in the organization he offered to assign him to a position in Washington temporarily, pending field assignment, and that Mr. Shore refused to accept and submitted his resignation.

It will be seen that there is a conflict in the facts as stated in these respective affidavits. However, it seems to us that in the light of statutory provisions and the regulations issued pursuant thereto, the conflict in the affidavits is not material to a decision of the basic issue involved in this case.

Section 532 of the Foreign Service Act of 1946, *supra*, clearly clothes the Secretary with full power to assign a staff officer or employee to a position at any post and to transfer such an employee from a position in one class to a vacant position within the same class, and from one post to another. The regulations and the manual in effect at the time of the transactions in question are in direct line with the terms of the statute.

In the application for employment as foreign representative filed on November

19, 1954, and signed by the plaintiff, under the heading 15(E), "If you will accept appointment in certain locations only, give acceptable locations", the application has the blank filled in "Europe preferred".

The plaintiff cites Part IV section 121.31 of the Foreign Service Manual, which was in effect at the time of the transactions in question, and quotes the following:

> "Applicants must be willing to accept assignment to any foreign post. Persons who limit their availability to specific locations cannot be considered *unless qualified candidates prepared to accept assignment to any post are not available. This does not apply to resident staff personnel or to persons employed for special programs and assigned to a certain post or area.*" [Emphasis supplied.]

Plaintiff does not allege that qualified candidates prepared to accept assignment to any post were not available. The last sentence in the quoted regulation refers only to resident staff personnel or to persons employed for special programs and assigned to a certain post or area. The application which plaintiff signed and the other documents and allegations in the record make it clear that the position sought and the character of assignment to which plaintiff made application was for general assignment and not for a particular program, and, therefore, the specific section does not apply to plaintiff's application or appointment.

Even if all of the facts as alleged by plaintiff and as shown by the attached documents are accepted as correct, it does not spell out a binding contract for any particular assignment, in view of the plain provisions of the statute in question. If the personnel officers had undertaken to make a binding contract for a specific assignment the effect of such effort would have been to deprive the Secretary of his statutory power to transfer any employee from any post to another post and they would thus have been exceeding their authority.

It is manifest that the Congress intended to give the Secretary of State plenary powers in handling the difficult diplomatic assignments and posts and to permit him to transfer and handle the assignments in such a way as, in his judgment, to secure the best results.

We dislike to enter a summary judgment in a case of this kind. Undoubtedly plaintiff wanted the assignment to Colombo; that was his original assignment. There is no question that he expended considerable sums in preparation; that he surrendered a position which he held and probably would have continued to hold but for the change. At the same time, the position which he was seeking was a responsible one. The statute is clear. Plaintiff is a man of capabilities and no doubt could thoroughly understand the meaning of the statute and the regulations issued pursuant thereto.

This much must be said for the employees in the State Department: they made considerable effort to secure a satisfactory substitute appointment. Even before plaintiff's resignation they offered to permit him to remain in Washington temporarily until a satisfactory assignment could be realized.

While the circumstances of the case are unfortunate from the standpoint of the plaintiff, it would be useless to put the plaintiff, the defendant, and the court to the expenses incident to a further hearing on the facts, since it is manifest that such an expenditure of time and money would in the end prove to be useless and would not affect the final result.

The petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.